UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

BOBBY HAYES,

                                 Plaintiff,                          15 CV 0398
          -against-                                            (JFB) (SIL)

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, NASSAU COUNTY POLICE OFFICER
CARL ARENA, NASSAU COUNTY POLICE OFFICER
PETER J. ELLISON, NASSAU COUNTY POLICE
LIEUTENANT VINCENT G. BODGEN and
NASSAU COUNTY POLICE OFFICERS JOHN DOES
1 through10, fictitious names used to identify presently
unknown police officers.

                                 Defendants.

--------------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH THE SUBPOENA SERVED ON NON-PARTY NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY STEVEN L. SCHWARTZ ESQ. AND IN OPPOSITION TO DEFENDANTS' ASSERTION OF DELIBERATIVE PROCESS PRIVILEGE ON BEHALF OF NON-PARTY STEVEN L. SCHWARTZ.**


**BRETT H. KLEIN, ESQ., PLLC**
*Attorneys for the Plaintiff*
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to defendants' letter motion dated May 23, 2019, to quash the subpoena for the testimony (and related documents) of Steven L. Schwartz and in opposition to the defendants' assertion of the deliberative process privilege on behalf of non-party Steven L. Schwartz. *See* ECF Doc. 48. Defendants' motion should be denied because defendants do not have standing to request the relief sought; because the testimony defendants seek to withhold is not protected by the deliberative process privilege; and because the testimony defendants seek to withhold is directly relevant to the claims pled.

## STATEMENT OF FACTS

Plaintiff Bobby Hayes brings claims of, *inter alia*, fabrication of evidence, and related federal and state law claims arising from an incident which occurred on January 29, 2014, in front of 719 Hempstead Turnpike, Nassau County, New York. *See* Klein Decl. Ex. 1. At such time, plaintiff was lawfully present at said address when he was approached by defendant officers who possessed no legal cause to arrest him. *Id*. at ¶¶ 34, 36. Plaintiff had not been behaving in a disorderly manner nor was he verbally or physically threatening when approached by the defendant officers. *Id.* at ¶¶ 37; 40. Despite this, defendant officers handcuffed and falsely arrested plaintiff for disorderly conduct and resisting arrest. *Id.* at ¶ 35. To justify the demonstrably false arrest, defendant officers Arena and Ellison fabricated a bizarre version of events which became the basis for the criminal charges brought by the Nassau County District Attorney's Office (hereinafter "NCDA") filed in Nassau County Criminal Court on January 29, 2014. *See* Klein Decl. Ex. 1 at 1-1, 1-2. Under penalty of perjury, defendants Arena and Ellison swore, *inter alia*, that in front of a crowd of "elderly people and small children" the plaintiff, who is black, stated to defendants, who are white, "go fuck yourself, you fucking white cracker cops, I ain't giving you shit," "I ain't

giving you shit you can arrest my Nigger Ass." *Id.* Defendant Ellison additionally falsely swore plaintiff physically resisted arrest and refused to be handcuffed. *Id*. A video of the incident later obtained by, and provided to prosecutors by, plaintiff's criminal defense attorney proved that plaintiff never made the aforementioned statements, was not behaving in a disorderly, threatening, or abusive manner, and that he did not resist arrest. *See id, see* Klein Decl. Ex. 1 at ¶¶ 37, 38, 40. The video of the incident additionally proved there was no crowd of elderly people and small children gathered. *See* Klein Decl. Ex. 1 at ¶ 44.

On January 30, 2014, plaintiff was arraigned on the fabricated criminal court complaint sworn to by defendants Arena and Ellison filed in Nassau County Criminal Court. *See* Klein Decl. Ex. 1 at 1-1, 1-2, 1-4, Transcripts. In arguing that high bail should be set on the plaintiff, the NCDA admittedly relied on the highly inflammatory statements defendants Arena and Ellison falsely claimed plaintiff made at the scene of his arrest, as well as statements defendants falsely claimed plaintiff made at the precinct, including, in sum and substance, purported threats to find and kill the officers when released, that he has guns, and that he hates all white cops. *See* Klein Decl. Ex. 1 at 1-3, 1-4, Transcripts. Based on the perjurious affidavits, and fabricated, threatening, and racially charged statements the defendants provided the NCDA, plaintiff remained in custody until February 7, 2014. *See* Klein Decl. Ex. 1 at 1-5.

On February 7, 2014, non-party Nassau County Assistant District Attorney Steven L. Schwartz (hereinafter "ADA Schwartz"), whose testimony is the subject of defendants' motion, viewed the video of plaintiff's arrest and, in direct response, asked the court to release the plaintiff from jail. *Id*. In asking for the plaintiff's release, on the public court record, ADA Schwartz stated, in sum and substance, that the high amount of bail on which the plaintiff was being held had been based on threats that were not reflected on the video, and that the plaintiff's conduct on the video,

in which the plaintiff does not resist arrest, and in fact immediately complies with the defendants officers' orders, "does not seem to be consistent with the narrative written out by the police officers." *See id.*[1] The court granted ADA Schwartz's request and plaintiff was released on his own recognizance on that date. *Id.* On February 20, 2014, the NCDA moved to dismiss all charges against plaintiff. *See* Klein Decl. Ex. 1 at 1-6.

On May 17, 2019, ADA Schwartz was properly served at the NCDA with a subpoena to appear at a deposition and to produce all relevant documents (to wit: the NCDA file) on June 4, 2019 for this lawsuit. *See* Klein Decl. Ex. 2. On May 23, 2019, counsel for defendants served the subject letter motion to quash plaintiff's subpoena, on their own behalf, and, at their request, on behalf of non-parties NCDA and ADA Schwartz. *See* ECF Doc. 48. Defendants now argue that the deposition of ADA Schwartz would elicit testimony as to decisions made in the Office of the Nassau County District Attorney's Office, which they claim are privileged, and also irrelevant. *Id.*

## ARGUMENT

### POINT I
### DEFENDANTS LACK STANDING TO ASSERT THE PRIVILEGE

"Where a party moves to quash a non-party witness subpoena, any claim of privilege or right must be personal to the moving party, not to the nonparty witness on whom the subpoena was served." *Cole v. City of New York*, 2011 WL 2899233, at *1 (S.D.N.Y. July 1, 2011), objections sustained, 2011 WL 6057950 (S.D.N.Y. Dec. 5, 2011) (internal quotations and citations omitted). "A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Id.* "The party invoking a privilege bears

---

[1] The statements were public record at the time they were made and remained so until plaintiff's entire criminal court file concerning the subject matter that forms the basis of the underlying complaint was sealed upon its dismissal pursuant to Criminal Procedure Law 160.50. The records have since been unsealed for use in this litigation.

the burden of establishing its applicability, and that burden is a heavy one, because privileges are neither lightly created nor expansively construed." *Id.* The burden of establishing the privilege rests with the party asserting it. *See Kaufman v. City of New York,* 1999 WL 239698, at *4 (S.D.N.Y. Apr. 22, 1999). Further, "[t]o invoke the deliberative-process privilege '[t]he claim . . . must be lodged by the head of the agency." *Schomburg v. New York City Police Dep't*, 298 F.R.D. at 138, 144 (S.D.N.Y. 2014). "The assertion of the privilege by an attorney is therefore improper." *Id.*

Here, the defendants are not in a position to assert the deliberative process privilege because the claim of privilege is not personal to them, but rather to nonparty ADA Schwartz. Further, defendants do not head the agency for whom the privilege is being claimed, to wit: The Nassau County District Attorney's Office. *See Conte v. City of Nassau*, 2009 WL 1362784, at *4, * 6 (E.D.N.Y. May 15; 2009), *Schomburg*, 298 F.R.D. at 144. Accordingly, the application is procedurally defective and should be denied.

**POINT II**
**THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY**

**A. The deliberative process privilege does not apply to factual material**

"The deliberative process privilege 'protects from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *See Schomburg,* 298 F.R.D. at 144 (quoting *In re Methyl Tertiary Butyl Ether Products Liability Litig.*, 643 F.Supp.2d 439, 441 (S.D.N.Y. 2009)). "The party seeking to invoke the deliberative process privilege bears the burden of demonstrating two requirements: (1) the document is predecisional and (2) it is deliberative." *Conte*, 2009 WL 1362784, at *4 (citations omitted). "A document is predecisional when it is prepared in order to assist an agency decision maker in arriving at his decision." *Id.* (quoting *Tigue*

*v. United States,* 312 F.3d 70, 80 (2d Cir. 2002)). "A document is considered deliberative where it is 'actually . . . related to the process by which policies are formulated.'" *Conte*, 2009 WL 1362784, at *5 (quoting *Nat'l Congress for Puerto Rican Rights v. City of New York,* 194 F.R.D. 88, 92 (S.D.N.Y. 2000)). "The privilege does not, as a general matter, extend to purely factual material." *Id.* Nor does the privilege extend to explanations of decisions already made, purely factual matters, or to any underlying factual data which can be severed from that which is actually deliberative or otherwise privileged. *See Rao v. New York City Health & Hosps. Corp.*, 1993 WL 307860, at *1 (S.D.N.Y. Aug. 13, 1993). "The exercise of judgment in formulating a factual statement will not raise the document to the level of deliberative." *Id* (citing *.Resolution Trust Company v. Diamond,*137 F.R.D at 640).

Defendants argue that ADA Schwartz should be prohibited from testifying at deposition as to all the information and documents the defendants had provided to NCDA during the criminal prosecution and which have already been exchanged during discovery in this action. *See* ECF Doc. 48. By advancing this argument defendants have already identified an area in which plaintiff may wish to depose ADA Schwartz that does not implicate the deliberative process of the NCDA, to wit: the *defendants' interactions* with ADA Schwartz concerning the demonstrably false, information, documents and statements the defendants provided to NCDA.

Defendants cannot invoke the deliberative process privilege to prevent ADA Schwartz from testifying to factual information about his interactions and communications with defendants regarding these documents and the video. *See Flaherty v. Giambra*, 2004 WL 816906, at *1 (W.D.N.Y. Jan. 27, 2004). Nor can they invoke the privilege to prevent him from now testifying about facts, information, and prosecutorial decisions, which were already acknowledged and

discussed publicly in open court during the criminal proceedings lodged against plaintiff. *See* Klein Decl. Ex. 1 at 1-5.

**B. The privilege is inapplicable where the deliberations are central to the case issues**

Moreover, "[w]here an agency's deliberations "are among the central issues in the case, the deliberative process privilege may be inapplicable." *Conte*, 2009 WL 1362784, at *5. *See also, Ebbert v. Nassau Cty*, 2007 WL 674725, at *11 (E.D.N.Y. Mar. 5, 2007). "In particular, when the subject of the lawsuit is the very nature of the decision-making process, the privilege should not foreclose the production of critical information." *Ebbert* 2007 WL 674725, at *11 (internal quotations and citations omitted). The deliberative process privilege is designed to protect the government's deliberative process from inquiry only if it is collateral to the litigation itself, it was not designed to block litigants from documents relevant to their lawsuits. *See Children First Found., Inc. v. Martinez,* , 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007). ("However, if the party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation then the deliberative process privilege 'evaporates.'") *Id.* (internal citations omitted). Even "when the factors shaping the decisions made by governmental officials are at issue," the privileges may not be raised to prevent disclosure. *Id.* (quoting *Natural Res. Defense Council v. Fox,* 1998 WL 158671, at *5 (S.D .N.Y. Apr. 6, 1998)). *See also*, *New York v. Oneida Indian Nation of New York,* 2001 WL 1708804, at *6 (N.D.N.Y. Nov. 9, 2001), *aff'd sub nom. State of New York v. Oneida Indian Nation of New York*, 2007 WL 2287878 (N.D.N.Y. Aug. 7, 2007); *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 13–14 (E.D.N.Y. 2014) ("It is certainly true that this privilege yields when the lawsuit is directed at the government's subjective motivation in taking a particular action.") *Id.* Further, the privilege is not absolute, but qualified. A party may overcome a valid assertion of the privilege by demonstrating

that other factors outweigh the interests of the government in maintaining the confidentiality of the information. *See Cipolla v. Cty. of Rensselaer*, 2001 WL 1223489, at *2 (N.D.N.Y. Oct. 10, 2001). "The privilege, as it is in derogation of the search for truth, is not to be expansively construed." *Kaufman v. City of New York*, 1999 WL 239698, at *4 (S.D.N.Y. Apr. 22, 1999) (internal citation omitted).

Even when properly invoked, the deliberative process privilege evaporates when the deliberations are central to the issues in the case, particularly in a case such as the instant matter where defendants would only be protecting their own perjurious behavior that might have otherwise gone unnoticed. *See Burbar* 303 F.R.D. 9, 13–14 ("When the decision making process is itself at issue, particularly in a civil rights action, the deliberative process privilege and other privileges designed to shield that process from public scrutiny may not be raised as a bar against disclosure of relevant information; it must yield to the overriding public interest in challenging discrimination.'") (internal citations and quotation omitted). Finally, plaintiff submits that the privilege is further inapplicable, even as to any testimony regarding the decision to dismiss the charges, because even if Mr. Schwartz's theory as to the dismissal were to be considered to be deliberative, his reasoning in reaching the decision is central to the issues raised by plaintiff, including plaintiff's fabrication of evidence claims. *See Burbar*, 303 F.R.D. at 9, 13.

Similarly, to the extent a dismissal memo was prepared by ADA Schwartz or any of his colleagues, which has been NCDA's practice in other cases, such would be critical evidence that NCDA should produce and be deposed on pursuant to the subpeona. *See* Klein Decl. Ex. 3. The dismissal memo, obtained in another case in this court without objection or redactions, but which is redacted here for privacy reasons, sets forth, among other pertinent information, "reasons for dismissal", and in another section, sets forth the NCDA's conferences on the case, which contains

statements and investigatory steps taken. All of this is clearly relevant to the core issues in this case, to wit: what the defendants conveyed to prosecutors.[2]

Finally, the cases defendants rely on are too factually dissimilar to the instant matter to support their argument. *See* ECF Doc. 48. Defendants rely on *Thompson v. City of Mount Vernon* to establish that the ADA's testimony would disclose information that is discretionary, thus implicating the deliberative privilege. *Id. see Thomas v. City of Mount Vernon*, 1990 WL 33598, at *1 (S.D.N.Y. Mar. 21, 1990). However, in *Thompson* the court found the plaintiff was trying to use a non-party prosecutor's office in the hopes of identifying unknown potential trial witnesses concerning unrelated investigations and complaints. *See Thomas,* 1990 WL 33598, at *1 ("The Court finds that plaintiff is unabashedly on a fishing expedition, and seeks this Court's assistance in that quest for speculatively related material."). *Thompson* is inapposite to the instant matter as here, all parties are known, the testimony only concerns the matter at hand, there is no risk to public disclosure of civilian witnesses involved in unrelated investigations or complaints, and there is a legitimate basis for the testimony. Defendants also cite to *Martinez v. State* for the purported proposition that the disclosure of ADA notes and memoranda in civil cases may impede that agency's ability to effectively prosecute cases. ECF Doc. 48; *see Martinez v. State*, 490 N.Y.S.2d 987, 988–89 (Ct. Cl. 1985). Defendants' reliance on *Martinez* is similarly misplaced. The public interest concern in *Martinez* was the fear of hampering crime witnesses from coming forward out of fear of public disclosure. *See Martinez*, 490 N.Y.S.2d at 988–89. In the instant matter, public interest strongly favors allowing plaintiff to obtain this highly probative evidence relating to defendants' perjurious activities that would not otherwise come to light. As ADAs are produced

---

[2] If the court would like to see the unredacted document, which happened to have submitted to the witness in this case, ADA Schwartz in that unrelated matter, we can of course submit it for *in camera* inspection or file it under seal.

to testify in such cases in the normal course, and the NCDA dismissal memo and notes were produced not only in another litigation involving the County that the undersigned is personally aware, but in the normal course in this District involving other counties and/or municipalities, the defendants' motion should be denied.

**POINT II**
**DISCOVERY OF THE UNDERLYING MATERIALS DOES**
**NOT RENDER THE TESTIMONY SOUGHT IRRELEVANT**

Defendants argue that all of the Nassau County District Attorney's information and documentation relating to the facts and circumstances of plaintiff's arrest have been provided during discovery. *See* ECF Doc. 48. Thus, claiming "the testimony of ADA Schwartz is irrelevant." *Id.* First, this is apparently not accurate as we have not received any Dismissal Memo or notes regarding meetings and/or representations made by the defendants to the NCDA other than the criminal court filings, and said documents, if they exist, must be produced pursuant to the subpoena. Further, ADA Schwartz's testimony is facially relevant to plaintiff's claim that the defendant officers conveyed fabricated evidence to prosecutors, resulting in a deprivation of plaintiff's liberty, which is actionable in this jurisdiction. *See Ricciuti v. N.Y.C. Transit Auth*., 124 F.3d 123, 130 (2d Cir. 1997) ("When a government official manufactures false evidence against an accused, and the use of that 'fabricated' evidence results in the deprivation of the accused's liberty, the government official infringes the accused's constitutional right to a fair trial in a manner that is redressable in a § 1983 action for damages.*"*) (internal citations omitted). The NCDA file, and the testimony of ADA Schwartz, are thus directly relevant to plaintiff's claims because there was no evidence *but for* the fabricated evidence which formed not only the basis of the plaintiff's arrest but also served to keep the plaintiff incarcerated.

9

Despite the obvious relevance of the NCDA file (including any Dismissal Memo and notes of interviews) and ADA Schwartz's testimony, defendants argue that the testimony is nonetheless irrelevant because it is duplicative. *See* ECF Doc. 48. Defendants have provided no support for this position which is contradictory to the basic rules of civil practice which provide for discovery via interrogatories, document requests, examinations, and depositions. The documents exchanged during discovery, as is often the case, provoke further questions that cannot be answered in any other manner, especially concerning the interactions, and the timing of interactions between ADA Schwartz and the defendants prior to, and following, the ADA's receipt of the video exonerating plaintiff. The documents provided during discovery do not replace the opportunities for clarity provided by live testimony, and are not otherwise a substitute for the separately created and maintained notes, memos, and other parts of the NCDA file that are not in the County's possession or for whatever reason have not yet been produced. Unless we have inadvertently overlooked it, we have *not* received the NCDA Dismissal Memo and the Court Action Sheet that were likely prepared in this case. These relevant and discoverable documents, together with any others that have not yet been produced, should be produced pursuant to the subpoena. For all the reasons cited above, plaintiff submits the deposition of ADA Schwartz, together with the production of the complete NCDA file, is necessary to advance his case.

## CONCLUSION

For the reasons stated herein, defendants' motion should be denied, and ADA Schwartz should be required to produce the complete NCDA file and testify, together with such other relief to plaintiff that the Court deems just and proper.

Dated: New York, New York
June 5, 2019

BRETT H. KLEIN, ESQ., PLLC
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132

By: _____
BRETT KLEIN