FILED
CLERK

8:22 am, Jan 21, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
BOBBY HAYES,                              : 15-cv-00398-RRM-SIL
                      Plaintiff,          :
                                          :
      - versus -                          : U.S. Courthouse
                                          : Central Islip, New York
                                          :
COUNTY OF NASSAU, et al.                  : December 28, 2017
                      Defendants          : 11:16 AM
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR PROCEEDINGS
BEFORE THE HONORABLE STEVEN I. LOCKE
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Plaintiffs**:          **William Nolan, Esq.**
                                 1103 Stewart Avenue, Suite 200
                                 Garden City, NY 11530

**For Defendants**:              Richard Femia, Esq.
                                 **(Telephonically)**
                                 Goldberg Segalla LLP
                                 200 Garden City Plaza
                                 Suite 520
                                 Garden City, NY 11530

**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                    Proceedings

1                THE CLERK:  Calling case 15-cv-398, Hayes v.
2    County of Nassau, et al.
3                Counsel, please state your appearance.
4                MR. NOLAN:  Yes, good morning, your Honor.
5                On behalf of the plaintiff, Bobby Hayes,
6    William Nolan, 1103 Stewart Avenue, Garden City, New
7    York.
8                THE COURT:  Mr. Hayes is with you; is that
9    correct?
10               MR. NOLAN:  That is correct.
11               THE COURT:  All right.  Welcome, Mr. Hayes.
12               MR. HAYES:  Hi, how are you doing?
13               THE COURT:  Please be seated.
14               And on the phone?
15               MR. FEMIA:  And for the defendant, Richard
16   Femia, Goldberg Segalla --
17               THE COURT:  All right.
18               MR. FEMIA:  200 Garden City Plaza, Suite 520,
19   Garden City, New York.
20               And your Honor, my (audio interference).
21               THE COURT:  All right.  Good morning, Mr. -- to
22   everybody, actually.
23               We're here, I have a motion for a withdrawal of
24   counsel; is that correct?
25               MR. NOLAN:  Yes, your Honor.

3

                    Proceedings

1           THE COURT:  All right.  You need the microphone

2    in front of you.  And Mr. Hayes, when you speak, you need

3    to speak into the microphone because we're recording

4    everything.

5           MR. NOLAN:  That's correct, your Honor.

6           THE COURT:  Okay.  Mr. Femia, do you have any

7    position on this motion?

8           MR. FEMIA:  The County takes no position.

9           THE COURT:  Okay.  Do you want to jump off the

10   phone or do you want to stay?

11          MR. FEMIA:  I'll stay.

12          THE COURT:  Okay.  And we're having some

13   computer glitches, so I apologize.  It's docket entry 34

14   is the motion to withdraw.  I'll start with you, Mr.

15   Nolan, why do we need to withdraw?

16          MR. NOLAN:  Your Honor, over the last several

17   months, Mr. Hayes and I have had a number of

18   conversations with regard to the direction of the case,

19   specifically with regard to theories of liability, claims

20   with regard to economic damages, as well as an overall

21   evaluation of the case and there has not been a meeting

22   of the minds whatsoever with regard to those various

23   issues.

24          THE COURT:  Okay.  I'm sorry, go ahead.

25          MR. NOLAN:  The conversations, you know, have

4

Proceedings

1  escalated in tone between the two of us and approximately

2  six weeks or so ago, maybe even two months now, I

3  suggested that it might be better for Mr. Hayes to seek

4  new counsel because it was clear that he and I were no

5  longer, you know, communicating properly with regard to

6  this matter.

7          THE COURT:  Okay.  Mr. Hayes, did you

8  understand what your lawyer just suggested?

9          MR. HAYES:  Your Honor, yes, I -- I heard what

10 he was saying just now but --

11         THE COURT:  Okay.  You understand his

12 perspective is essentially -- and this happens sometimes,

13 either your relationship, the relationship between the

14 attorney-client has broken down in a way where you're

15 just not on the same page any longer.

16         MR. HAYES:  Your Honor, listen, I felt that Mr.

17 Nolan hasn't been in my best interest from day one of my

18 case.

19         THE COURT:  Okay.

20         MR. HAYES:  I told him on several occasions to

21 get certain information that definitely help in solidify

22 my case.

23         THE COURT:  Okay.

24         MR. HAYES:  And he had -- he -- he hasn't done

25 it, and when he did do it, it was years later.  I asked

5

Proceedings

1   him several times over the past two, maybe three years,

2   can I have a copy of my files, what's going on, and Mr.

3   Nolan would not give me a copy of my files.  He would not

4   -- like, I'd call him, he give me the runaround.  Like

5   it's certain things that have been going on with me and

6   he -- he -- he -- he really was no help to me.

7             THE COURT:  Okay.

8             MR. HAYES:  And I feel that he's --

9             THE COURT:  So tell --

10            MR. HAYES:  -- not in my best interest, and

11  this is my life.

12            THE COURT:  Okay.

13            MR. HAYES:  This is what I'm going through.

14            THE COURT:  Just to reflect back to make sure

15  that I understand, I mean it sounds like you two, the one

16  thing you do agree on is that you're not agreeing on how

17  things need to be.  Is that fair to say?

18            MR. HAYES:  Yes, sir.

19            THE COURT:  Okay.  So is it also fair to

20  conclude then that you do not object to Mr. Nolan

21  withdrawing from this case, and you'll be able to get

22  another lawyer who you might be more on the same page

23  with.

24            MR. HAYES:  Listen, I don't even know where to

25  start to get another lawyer.  I -- like I said, Mr. --

Transcriptions Plus II, Inc.

6

Proceedings

1  Mr. Nolan was withholding my files and --

2          THE COURT:  No, no, no, I understand that.

3          MR. HAYES:  -- and if I would've had access to

4  my files when I was asking for them several years ago, I

5  probably would've been able to get a -- a -- I actually

6  probably would've already had a new attorney by now.

7          THE COURT:  Well, I would give you -- if you

8  want to proceed down this path, we can stay things.  We

9  can give you time to find another attorney.  In other

10 words, time wouldn't lapse during a window period, let's

11 say 60 days, where you can --

12         MR. HAYES:  Well --

13         THE COURT:  -- take -- do you have your file

14 now?  Let me start with that.

15         MR. HAYES:  No.

16         THE COURT:  Okay.  Mr. Nolan?

17         MR. NOLAN:  Your Honor, there's something I

18 would like to bring to the --

19         THE COURT:  Microphone, the microphone.

20         MR. NOLAN:  Sorry -- like to bring to the

21 attention of the Court, but I would like to do so, if

22 possible, outside the presence of defense counsel.

23         THE COURT:  Mr. Femia?

24         MR. FEMIA:  I mean, I don't know about (audio

25 interference).

Proceedings

1          THE COURT:  You're going in and out, Mr. Femia.

2   I can't hear you.  It sounds like you do not consent to

3   that.  Is that correct?

4          MR. FEMIA:  It -- with the information that I

5   have, I don't know if it's appropriate (audio

6   interference) communications with (audio interference).

7          THE COURT:  This is why I make people come to

8   court, Mr. Femia --

9          MR. FEMIA:  I understand.

10          THE COURT:  -- because I can't understand a

11   word you're saying.  Did you have notice of today's

12   conference?

13          MR. FEMIA:  Can you hear me, your Honor?

14          THE COURT:  Now he's gone anyway.

15          MR. FEMIA:  Hello?  Your Honor?

16          THE COURT:  No, he's not gone.

17          MR. FEMIA:  I'm here.  I could hear you.  I

18   could hear feedback when I speak.

19          THE COURT:  Okay.  That's how I heard you

20   actually.

21          MR. FEMIA:  Okay.

22          THE COURT:  So let's try again.  What is your

23   position?

24          MR. FEMIA:  I don't know if I have enough

25   information to have an informed opinion as to whether or

8

Proceedings

1  not there should be ex parte communications with the

2  Court.

3          THE COURT:  It sounds to me like Mr. Nolan

4  wants to communicate things that might otherwise be

5  protected by an attorney-client privilege in order to

6  better determine this motion, but he's asking for your

7  consent to do it outside of your presence.

8          MR. FEMIA:  If that's what needs to happen,

9  then the County consents.

10         THE COURT:  Okay.  Why don't we do this then,

11 since you're on the phone instead of present in court,

12 why don't we hang up and then why don't you stay by the

13 phone, and we can get you back on once the communication

14 is concluded.  How's that?

15         MR. FEMIA:  That's fine.

16         THE COURT:  Okay.  All right.  So we'll hang up

17 with you now --

18         MR. FEMIA:  Okay, great.

19         THE COURT:  -- and then call you back.

20         MR. FEMIA:  All right.  Thank you.

21 (Defense counsel disconnects)

22         THE COURT:  Okay.  It's just the four of us

23 now.

24         MR. NOLAN:  Okay.  Thank you, your Honor.

25         Just to respond to Mr. Hayes' position with

9

Proceedings

1  regard to requests that he made.  Mr. Hayes was provided

2  with deposition transcripts, pleadings, documents

3  throughout the course of this litigation.  In October,

4  there was a meeting in my office where I suggested that,

5  you know, because of the communication issues we were

6  having, that he should get new counsel, I would provide a

7  copy of the file to new counsel.

8         Mr. Hayes said he had already been speaking to

9  new counsel because we were having issues.  On October

10 18th, we had a meeting.  I had copied the entire file and

11 had a Staples box with all of the documents waiting for

12 Mr. Hayes.  He did not show up on October 18th.  In fact,

13 he just showed up on the 19th, walked into my office,

14 demanded his file.  I said, I have no problem giving you

15 the file, but you just need to sign a letter

16 acknowledging receipt of the file.  He refused to do

17 that.

18        MR. HAYES:  Absolutely not.  Absolutely not.

19        THE COURT:  Well, let him finish, Mr. Hayes.

20 You'll get to say everything you need to say.

21        MR. NOLAN:  He refused to --

22        THE COURT:  Hold on.

23        MR. NOLAN:  -- sign the letter, took the

24 letter, but the file remained behind.  And in November, I

25 believe it was the 27th and the 28th, I had two

10

Proceedings

1   conversations with Mr. Hayes.  On the 27th, I was

2   driving, I was not in the office, missed call, I called

3   him back.  He told me he was aware that he had received

4   the papers with regard to the motion to be relieved.  I

5   said you need to appear in court that day.  I asked him

6   if he had gotten a new attorney.  He said he had not but

7   confirmed that he was speaking with attorneys.

8           When I showed up in my office on November 28th,

9   the Staples box that contained the file documents for the

10  Hayes file was missing from my office.

11          THE COURT:  Okay.  Mr. Hayes, do you want to

12  reply?

13          MR. HAYES:  Yes.  The meeting that we had, when

14  I came up there to get the copy of my files because I had

15  been asking him for several years, and it was actually

16  one specific piece that I really wanted.  It was the

17  telephone conversations from the Nassau County

18  Correctional Facilities.  He -- he had gave me a copy of

19  that, like a year prior to it but when he gave it to me,

20  he actually end up being somehow the wrong COVID-19.  So

21  when I called --

22          THE COURT:  This is all on discs, we're talking

23  about?

24          MR. HAYES:  Yes, this is one -- no, no, no,

25  it's a whole file but I need -- I wanted one specific

Proceedings

1  piece of my case.

2          THE COURT:  Oh, a tape of a phone call that was

3  on a disc?

4          MR. HAYES:  Yes.

5          THE COURT:  Got it.

6          MR. HAYES:  Since the deposition that I heard

7  it, I wanted to hear the rest of it because they only let

8  me hear pieces.

9          THE COURT:  Got it.

10          MR. HAYES:  And they presented him a copy, and

11  the copy that he gave me wasn't even in.  So I'm calling

12  him, calling him, calling him, for it and he's giving me

13  the runaround.  This is for several months.  I'm -- hey,

14  maybe a year.

15          THE COURT:  Okay.

16          MR. HAYES:  This is my lawyer, what is he

17  giving me the runaround for about something about my

18  case, this is my life.

19          THE COURT:  Okay.  What is it that you think is

20  -- you must have -- so you have some portion of the file,

21  I guess, as a --

22          MR. HAYES:  Yes, I have everything that he

23  provided me with.

24          THE COURT:  Is there anything, to your

25  knowledge, at least at this point, is there anything

                      Proceedings

1  missing?

2          MR. HAYES:  I have no idea.  I've -- I've been

3  asking him for a copy of the files.

4          THE COURT:  Okay.

5          MR. HAYES:  I don't know what happened to the

6  Staples box he talking about.  I don't have it.

7          THE COURT:  Okay.

8          MR. HAYES:  And I do want a copy of my -- of my

9  case.

10          THE COURT:  Okay.  Mr. Nolan, do you have a

11  copy of -- whatever was in the box, is there an

12  electronic copy as well, that can be put on a disc?

13          MR. NOLAN:  There is not, no.

14          THE COURT:  Okay.  Do you have another -- did

15  you give him the originals or -- of the --

16          MR. NOLAN:  No, copies.

17          THE COURT:  So you have the original still.

18          MR. NOLAN:  I do.

19          THE COURT:  All right.  Here's what I would

20  suggest.  It's clear that you two are not getting along,

21  and this relationship needs to be severed, so I am going

22  to grant the motion, and we'll get Mr. Femia on the

23  phone, and I'll say only that as a conclusion.

24          What I am going to suggest then -- well, wait,

25  let's back up one more second.  Mr. Hayes, at this point

Proceedings

1  in time, do you have a copy of the entire file to your

2  knowledge?  I understand you can't know what's in and

3  what's not.

4            MR. HAYES:  No.

5            THE COURT:  Okay.  Mr. Nolan, I'm going to ask

6  you or someone in your office to make another copy, put

7  it on a disc, so this way you can have it electronically.

8  You can store on the computer, Mr. Hayes.  You can make

9  as many copies as you want, and there's this notion of

10  copying papers would be eliminated.

11            MR. NOLAN:  There's 1,000 pages and it was at

12  cost to me, that I'm probably not going to see again,

13  this box just happened to go missing the day after I had

14  a conversation with him.

15            THE COURT:  Look, there's nothing for me to say

16  about that.  The box is missing.  Mr. Hayes said he

17  didn't take it.  The motion is to withdraw.  I am going

18  to grant the motion.  I want Mr. Hayes to have his

19  papers, so that they can be shopped around.  It's as

20  simple as that.  That is the condition of granting the

21  motion and ending this.

22            MR. NOLAN:  It's got to be done because it's

23  much more expensive, believe it or not, to have files

24  scanned than it is to have them copied.  That's what I

25  wanted to do originally because it is thousands of pages.

14

Proceedings

1          THE COURT:  How many thousands of pages are we

2    talking about?

3          MR. NOLAN:  I think it was 2,200 pages.

4          THE COURT:  Okay.  And so that will fit in one

5    box.

6          MR. NOLAN:  It was in one box.  Yes.

7          THE COURT:  All right.

8          MR. HAYES:  So Your Honor, let me just ask you

9    for one question.

10          THE COURT:  Sure.

11          MR. HAYES:  I don't understand why he was

12    (indiscernible) my files because -- because this -- he

13    brought it up.  When I came to his office for the

14    meeting, I was (indiscernible) came on it.

15          THE COURT:  You --

16          THE CLERK:  You have stay near the microphone.

17          THE COURT:  There's a green light at the

18    bottom.

19          MR. HAYES:  Like he said, I was supposed to

20    come to his office on the 18th for the meeting.  Now,

21    when I came up there, the original meeting was for me to

22    come up there and pick up my papers.  Now when I -- I got

23    up there, he -- he told me he's not giving me my file

24    unless I sign-off on this paper, so he signed-off on the

25    paper for him to be off my case.

15

Proceedings

1          I told him, no, I'm to signing off on this in

2    order for me to get my paperwork.  I --

3          THE COURT:  Okay.  Typically, people do sign

4    receipts in exchange for paper.

5          MR. HAYES:  But that wasn't a receipt,

6    acknowledging that I have it.

7          THE COURT:  Right.

8          MR. HAYES:  He wanted me to sign a -- a -- a

9    letter stating that I wanted him off my case at that

10   point.

11         THE COURT:  That you -- say it again, I didn't

12   hear you.  You wanted him off your case?

13         MR. HAYES:  Yeah, so it was like he was

14   negotiating with me --

15         THE COURT:  Okay.

16         MR. HAYES:  -- about my paperwork.

17         THE COURT:  Regardless, we're past that point

18   then.  It doesn't -- at that point, it doesn't matter.

19   What we'll do, then I will permit you to make a hard copy

20   to run it through a copy machine, I guess is what you're

21   asking, and then Mr. Hayes, do you want that shipped to

22   your home or somewhere else?

23         MR. HAYES:  Now, your Honor, I --

24         THE COURT:  Or do you want to pick it up?

25         MR. HAYES:  Your Honor, it actually would

16

Proceedings

1   probably be easier for me to have it digitally because

2   everything's electronic right now and like me carrying

3   around a box of papers --

4           THE COURT:  Well, it's only one box.  That's

5   why I asked how many documents exactly it was and then

6   this way, if you want to take it and scan it, you'll be

7   permitted -- you can certainly do that but I am not going

8   to make Mr. Nolan incur the cost at this point, since

9   you're severing the relationship pursuant to order, not

10  at your suggestion.

11          So I will permit him to do that.  The question

12  I have for you is do you want it shipped to an address,

13  which you can tell us right now, or do you want to pick

14  it up?  We'll do it either way.

15          MR. HAYES:  He could ship it.

16          THE COURT:  What is the address?  I want you to

17  put the address on the record, so there's no, you said

18  this address, no that address.  What is the address you

19  want?

20          MR. HAYES:  It's 86-39 --

21          THE COURT:  That's 86-39 --

22          MR. HAYES:  -- 208th Street --

23          THE COURT:  2-0-8th Street?

24          MR. HAYES:  Yes.

25          THE COURT:  Is that a house or is there an

                              Proceedings

1   apartment?

2           MR. HAYES:  Apartment 2D, 2 as in Dog.

3           THE COURT:  2D as in David?

4           MR. HAYES:  Yes.

5           THE COURT:  2D as in David.

6           MR. HAYES:  That's Queens Village, New York.

7           THE COURT:  Queens  Village.  Yeah?

8           MR. HAYES:  11427.

9           THE COURT:  11427.  All right.  I'm going to

10  read the whole thing back to you.  Correct me if I am

11  wrong.

12          MR. HAYES:  Yes, sir.

13          THE COURT: 86-39 208th Street, Apt 2D, Queens

14  Village, NY 11427.

15          MR. HAYES:  Yes, sir.

16          THE COURT:  That's correct?

17          MR. HAYES:  That's correct.

18          THE COURT:  All right.  Mr. Nolan, when are you

19  going to ship that?

20          MR. NOLAN:  In 30 days.

21          THE COURT:  Okay.  We'll have it shipped to you

22  in 30 days and I'm going to give you time at the end of

23  this, so you can take the box and scan it, bring it to a

24  lawyer, whatever you want to do.

25          Mr. Hayes, do you want it shipped -- do you

18

                    Proceedings

1  want it for signature, do you want it just left at your

2  door?  How do you want it delivered?

3         MR. HAYES:  Um.

4         THE COURT:  It could be regular mail, whatever

5  -- tell us now, so we can get on the same page.

6         MR. HAYES:  Yeah, it could be certified, so I -

7  - somebody could sign for it.

8         THE COURT:  So you have to sign for it at the

9  post office.  That means if you're not there, you have to

10 go to the post office and pick it up.

11        MR. HAYES:  No, I don't want it that way.

12        THE COURT:  So then you want it just regular

13 mail, left at your door?

14        MR. HAYES:  Yeah, yeah, that's fine.

15        THE COURT:  Okay.  So it will be regular mail,

16 left at your door.  Let's assume it takes a week to get

17 there.  So how much time, once you have the documents and

18 the clock will start ticking, 37 days from now, how much

19 time do you want to go see lawyers with?  I'll give you

20 60 days -- up to 60 days.

21        MR. HAYES:  And what if I can't find a lawyer

22 within 60 days that want to take my case?

23        THE COURT:  Then you would have to proceed

24 without a lawyer.

25        MR. HAYES:  All right.  So as of right now, I

19

Proceedings

1   will like to proceed without a lawyer, so the time will

2   keep ticking.

3            THE COURT:  Okay.  But then you can -- that is

4   your right to do that.

5            MR. HAYES:  That's what I want -- that's what I

6   want to do.

7            THE COURT:  It is easier typically to navigate

8   in court with the assistance of a lawyer.  I will permit

9   you to go either way, and just because we keep going

10  doesn't mean you can't continue to look for a lawyer.

11  You can do it on parallel tracks.

12           MR. HAYES:  All right.

13           THE COURT:  Okay.  What we're going to do now

14  then, the motion is granted.  I want to get Mr. Femia,

15  your adversary back on the phone --

16           MR. HAYES:  Um-hum.

17           THE COURT:  -- so then we can circle back and

18  continue.

19           MR. HAYES:  All right.

20           THE COURT:  All right.

21           MR. HAYES:  All right.

22           THE COURT:  So the motion is granted with the

23  condition that within 30 days, the box of documents will

24  be shipped, Mr. Nolan.

25           Also, you'll need to go downstairs, Mr. Hayes,

20

Proceedings

1   and give the -- there's a clerk's office on the first

2   floor.  You need them to put your address into the docket

3   because this way, if we issue an order because you're not

4   on what we call ECF, basically the computer system, we'll

5   mail you copies of everything but we need the address in

6   order to do that.  I can't enter your address onto the

7   docket, the clerk has to do it downstairs.  That's why I

8   need you to stop there, okay?

9           MR. HAYES:  All right.

10          THE COURT:  Also, through that office, there's

11  something called a pro se clerk, pro se means you're

12  without a lawyer.

13          MR. HAYES:  Um-hum.

14          THE COURT:  You can always ask for the pro se

15  clerk, and they could help you navigate things like that.

16  Okay?

17          MR. HAYES:  Um-hum.

18          THE COURT:  All right.

19          MR. HAYES:  Yes, sir.  So your Honor, let me

20  ask you another question.

21          THE COURT:  Sure.

22          MR. HAYES:  The courts can't appoint me another

23  lawyer?

24          THE COURT:  No, not in civil litigation.  It is

25  possible but extremely rare, you would have to make a

21

Proceedings

1   motion --

2              MR. HAYES:  All right.

3              THE COURT:  -- that you would like another

4   lawyer appointed but there are so few and far between,

5   it's only in criminal cases that you'll automatically get

6   a lawyer appointed.

7              MR. HAYES:  All right.  So I would like to make

8   a motion though.

9              THE COURT:  Okay.  Hold on.  One second.

10  (Pause)

11             THE COURT:  Yeah, we can do this with Mr. Femia

12  on the line.  So give us one second, Mr. Hayes, and then

13  we'll continue the conversation.

14  (Pause)

15  (Mr. Femia rejoins conference)

16             THE CLERK:  Mr. Femia?

17             MR. FEMIA:  Yeah.

18             THE COURT:  Okay, you're back, Mr. Femia?

19             MR. FEMIA:  Yes, I am.

20             THE COURT:  Okay.  What's happened in your

21  absence is I had a dialogue with both Mr. Hayes and Mr.

22  Nolan.  They explained to me the situation and I granted

23  the motion on the condition that Mr. Nolan mail a copy of

24  the file to an address for Mr. Hayes, which Mr. Hayes

25  provided and he'll do that within 30 days.

Proceedings

1    Now we're back on the record all together.  Mr.

2  Hayes said he would like to make a -- he may be looking

3  for a lawyer, but would like to make a motion for the

4  appointment of counsel.  I had explained that counsel is

5  only automatically appointed in criminal cases, not civil

6  cases.

7    Now with you on the line, Mr. Femia, I'm going

8  to explain Mr. Hayes, in order to make that motion, you

9  have to write a letter to the district judge.  There are

10  two judges assigned to this case, I am one, and Judge

11  Bianco is the other.

12    MR. HAYES:  Uh-hum.

13    THE COURT:  And when you go down to the clerk's

14  office, you can even ask them to print a copy of the

15  docket sheet, which would have the judges names on it and

16  just that kind of thing.

17    You would make a motion in writing, explaining

18  (a) that you would like a lawyer appointed in a civil

19  case, and (b) the reasons why you think you should have

20  one appointed, keeping in mind that there's a limited

21  number of appointments in civil cases.  So in other

22  words, your case would have to theoretically be more

23  deserving of whoever else had also asked for a lawyer.

24    Do you understand?

25    MR. HAYES:  Yes, sir.

23

Proceedings

1          THE COURT:  Okay.  And you can do that by

2    letter to Judge Bianco.

3          In the meantime -- well, before you go, Mr.

4    Nolan, where were in this case?  And Mr. Femia, I will

5    ask you the same question.  Have depositions occurred?

6          MR. FEMIA:  We were in the middle of --

7          MR. NOLAN:  (Indiscernible).

8          MR. FEMIA:  -- the defendant's deposition.

9          THE COURT:  Mr. Femia, say it again?

10          MR. FEMIA:  We conducted the plaintiff's

11    deposition and we were in the middle of the first named

12    defendant's deposition.

13          THE COURT:  Okay.  So then, Mr. Hayes, you're

14    familiar with the deposition process, what happens?

15          MR. HAYES:  Yes, sir.

16          THE COURT:  Okay.

17          MR. HAYES:  Yes, sir.

18          THE COURT:  Okay.  And it sounds like where we

19    are in the case, is documents have been exchanged and

20    depositions are being taken.  If you don't have a lawyer,

21    you would have to take the depositions and in other

22    words, be the person who asks the questions to the

23    defendants or whoever's depositions have already been set

24    up on certain dates.

25          Do you understand?

24

Proceedings

1          MR. HAYES:  Yes, sir.

2          THE COURT:  Okay.  Are you prepared to go

3    forward with that, or would you like some time to find a

4    lawyer to do that on your behalf?  I had already asked

5    you that.

6          MR. HAYES:  No, I'm prepared to go forward.

7          THE COURT:  Okay.  Has a calendar already been

8    set for those depositions?

9          MR. NOLAN:  No, your Honor.

10         MR. FEMIA:  No.

11         THE COURT:  Okay.  So then Mr. Hayes, you'll

12   have to get on the phone with Mr. Femia and work out

13   dates that fit your calendar, Mr. Femia's calendar, and

14   the witness' calendar, okay?

15         MR. HAYES:  Yes, sir.

16         THE COURT:  Okay.  Just give me one second, I'm

17   just going to pull up a scheduling order.  Does anybody

18   off the top of their head know what the deadline is to

19   complete depositions?

20         MR. NOLAN:  I don't, your Honor.

21         THE COURT:  Mr. Femia, do you have it?  I have

22   an amended scheduling order but the deadline's passed.

23         MR. FEMIA:  There were several amended

24   scheduling orders.  We had a few hiccups along the way in

25   the case, this application (indiscernible).

Transcriptions Plus II, Inc.

25

Proceedings

1          THE COURT:  Okay. Well, why don't we do this? I
2  will set a new deadline.  We'll set a new scheduling
3  order, this way we can all be on the same page.
4          MR. HAYES:  Your Honor, can I ask you another
5  question?
6          THE COURT:  Yeah, sure.
7          MR. HAYES:  I don't want no -- I don't want no
8  time charged to me.  I -- I would like a -- I would --
9  I'm ready and I would like to proceed to trial.
10          THE COURT:  Well, we -- this -- there's no
11  charging of time here.  The time is flexible.  I can set
12  the time.
13          MR. HAYES:  Oh.
14          THE COURT:  So don't worry about that kind of
15  thing.
16          MR. HAYES:  All right.
17          THE COURT:  But in a civil case before a trial,
18  you have a right to take depositions and they have a
19  right to take depositions.
20          Mr. Femia, did you want to take anybody's
21  deposition other than the plaintiff's?
22          MR. FEMIA:  No, your Honor.  There's -- as of
23  now, we were in the middle of defendant depositions.
24          THE COURT:  No, I understand but my point is
25  Mr. Hayes is certainly free to rethink how many

26

Proceedings

1   depositions he wants to take and make that decision in

2   which case you don't need any other depositions is what

3   am asking.

4           MR. FEMIA:  Yes, your Honor.

5           THE COURT:  Okay.

6           MR. FEMIA:  As of right now, we don't believe

7   that we would need any depositions --

8           THE COURT:  Okay.

9           MR. FEMIA:  -- other than (indiscernible).

10          THE COURT:  Do you intend to move for summary

11  judgment ultimately?

12          MR. FEMIA:  Yes, we do.

13          THE COURT:  Okay.  Typically -- and this

14  happens in almost all civil cases, Mr. Hayes.  At the end

15  of discovery, meaning the document exchange and the

16  depositions, the defendant will move for what's called

17  summary judgment, meaning judgment without a trial.

18          MR. HAYES:  Uh-hum.

19          THE COURT:  The Court -- and that would go to

20  Judge Bianco in the first instance.  He may refer it to

21  me to ask me to make a recommendation about whether the

22  motion should be granted.  I can tell you candidly, I

23  have no opinion and I'm not intimately familiar with the

24  facts of this case at this point at all, at which point

25  there would be a decision either granting the motion and

27

Proceedings

1  the case would be dismissed, or denying it and then you

2  would proceed to trial.

3        So there are still several -- we're still a

4  couple of steps away from trial, even with no delay at

5  all.  So that being said, I guess there was a prior

6  discussion with Mr. Nolan and Mr. Femia about deposing

7  all of the defendants.  You're still entitled to do that,

8  and you can also have subpoenas issued to nonparty

9  witnesses.  You can imagine in a car accident, there

10  might've been someone standing on the corner who just saw

11  it, a person like that with no interest in the case.  If

12  that person exists, you have a right to depose them, too,

13  see what their version or view of the facts might be.

14        All that being said, and you don't have to

15  decide today, but I will give you some time by which to

16  make a decision, you have to decide whether you want to

17  continue with the defendant's depositions which would

18  allow you to see what they would say at trial, in other

19  words sort of nail down their version, or you are also

20  entitled to forgo that if you want.

21        If you have a lawyer, he will say I want the

22  depositions.  It --

23        MR. HAYES:  I want the depositions.

24        THE COURT:  Okay.  So the next question is how

25  many depositions do you think you need because I am going

28

Proceedings

1   to give you time for it, I just want to give you a

2   reasonable amount of time.

3           MR. HAYES:  From everybody that was involved in

4   the case.

5           THE COURT:  Okay.  But I don't know how many

6   people that is.  That's why I am asking you.

7           MR. HAYES:  Oh, I'll know once I -- Once I

8   receive the rest of the files and go through the

9   paperwork.

10          THE COURT:  Okay.  Well, right now, I see that

11  there are two -- wait a minute, one, two -- three

12  individual defendants; is that right, Mr. Femia?

13          MR. FEMIA:  That is correct.

14          THE COURT:  Okay.  Presumably you would want to

15  take those three depositions.  I will give you time for

16  all of this.  Why don't we give you --

17          MR. HAYES:  Is ADA Lewis (ph.) in there because

18  I -- I want a deposition from here.

19          THE COURT:  I don't believe --

20          MR. HAYES:  Yes, I need one --

21          THE COURT:  So that would be four.

22          MR. HAYES:  I need one from her.  That was

23  the --

24          THE COURT:  Okay.

25          MR. HAYES:  -- that was the -- the -- the

Proceedings

1    prosecutor at arraignment.

2         THE COURT:  Okay.  What you need to do is I

3    think -- and like I said, I'm going to give you time to

4    think about this, I'm not trying to put you on the spot

5    here, that's already four people.  What I am going to do

6    is give you 90 days to get all of this done, because

7    you're also going to have to arrange for a court

8    reporter, you know, a stenographer to take down all --

9         MR. HAYES:  Uh-hum.

10        THE COURT:  -- everything that's said.  So

11   we'll give you a deadline to get all the depositions done

12   of -- I'm just looking at a calendar now -- we'll give

13   you till March 30th to do that.

14        In some cases, people want to use experts.

15   Were experts identified before, Mr. Nolan, in this case?

16        MR. NOLAN:  No, your Honor.

17        THE COURT:  Okay.  You could imagine Mr. Hayes,

18   in a car accident case, just by way of example, if

19   somebody was inured, they might call a doctor as an

20   expert to better explain to the jury their injuries.

21        MR. HAYES:  Uh-hum.

22        THE COURT:  Okay?  I don't know that this case

23   lends itself to experts but I would like you to think

24   about this.  Before you respond, Mr. Femia, were there

25   any experts from your perspective?

30

Proceedings

1     MR. FEMIA:  No, your Honor.

2     THE COURT:  Okay.

3     MR. FEMIA:  This case doesn't involve anything

4  but a false arrest claim.

5     THE COURT:  Okay.  All right.  So it seems

6  unlikely, but Mr. Hayes, that's up to you.

7     MR. HAYES:  Oh, I do have a couple of experts,

8  a couple of doctors, I --

9     THE COURT:  Okay.

10     MR. HAYES:  Yeah, I do.

11     THE COURT:  If that's the case, there are a

12  couple of things that have to happen.  One is you have to

13  identify who they are --

14     MR. HAYES:  All right.

15     THE COURT:  -- for Mr. Femia and you have to

16  explain the topics that they would testify about, so that

17  he has an idea.  In other words, if it's a doctor about a

18  medical injury, that's a topic.

19     MR. HAYES:  All right.

20     THE COURT:  Whether it was a broken arm or

21  whatever the injury is.

22     MR. HAYES:  Absolutely.

23     THE COURT:  You would have to identify those.

24  I am going to give you a deadline by which to do that, as

25  well.  You have to identify in writing.

31

Proceedings

1        MR. FEMIA:  And your Honor, if I could just

2   briefly address that point?

3        THE COURT:  Yes, sure.

4        MR. FEMIA:  So if a reading of the complaint

5   shows that there is no excessive (audio interference).

6   I'm kind of confused as to why there would be the

7   identification of experts to testify possibly at trial

8   regard to any injuries that Mr. Hayes suffered.

9        MR. HAYES:  You'll see at trial.

10       THE COURT:  Well, what -- this is a false

11  sarrest case and excessive force, or just false arrest,

12  or something else?

13       MR. NOLAN:  Both.

14       MR. FEMIA:  Just false arrest.

15       THE COURT:  Well, Mr. Nolan, you said both.

16       MR. NOLAN:  I'm sorry, it was --

17       MR. HAYES:  False arrest.

18       MR. NOLAN:  -- false arrest.

19       MR. HAYES:  Civil rights violation.

20       THE COURT:  Well, false arrest, civil rights

21  violation is a big umbrella.

22       MR. HAYES:  Yeah.

23       THE COURT:  False arrest is one kind of civil

24  rights violation.

25       MR. HAYES:  Uh-hum.

32

Proceedings

1      THE COURT:  Well, were you injured during the

2  arrest?

3      MR. HAYES:  Yes.

4      THE COURT:  Okay.  What I am going to do at

5  this point -- well, Mr. Femia, do you want to respond?

6  I'm just going to set a deadline for this.  I'm just

7  giving you a schedule, we're not making rulings.

8      MR. FEMIA:  Yes.

9      THE COURT:  Mr. Femia, do you want to respond?

10      MR. FEMIA:  Yes, your Honor.  There were no

11  injuries pled nor any sort of excessive force claim.

12      THE COURT:  Okay.  Those are two slightly

13  different things, although typically if you're hurt

14  during an arrest, there might be an excessive force,

15  meaning an allegation that the police used excessive

16  force.

17      MR. HAYES:  No, no.

18      THE COURT:  Okay.  I think at this point, Mr.

19  Femia, what I am going to do is I'm going to suggest Mr.

20  Hayes, you identify the individuals you say would be

21  experts, the subjects of what they would be testifying

22  about, and Mr. Femia, you could make whatever motion you

23  want in response to that, as soon as you receive the

24  disclosures.

25      Just so you're aware, Mr. Hayes, if you were to

Proceedings

1  have a doctor, for example, testify Mr. Hayes broke his

2  arm, and here's the reason why, they of course would be

3  entitled to an expert who would be allowed to examine

4  you.

5              MR. HAYES:  Yes.

6              THE COURT:  And then testify essentially to the

7  opposite in support of the defendants.  All right?  So I

8  am going to give you until March 30th which is also the

9  deadline for depositions to serve Mr. Femia with some

10 kind of written explanation of who your experts are, and

11 what they'll be testifying to, and just for the sake of

12 clarity, there are cases -- civil cases in the federal

13 courts are governed by the Federal Rules of Civil

14 Procedure.  Rule 26 talks about this.  So if you wanted

15 to look it up, which you can Google online or go to the

16 library, that's where you would look.

17             Mr. Femia, with no prejudice to you or making a

18 motion, or anything else, I want to give you time to

19 identify rebuttal experts if that becomes appropriate.

20 Is 30 days enough or do you want more?

21             MR. FEMIA:  30 days from now, you're saying,

22 your Honor?  I'm sorry.

23             THE COURT:  No, 30 days from March 30th.

24             MR. FEMIA:  Oh, yes.

25             THE COURT:  So it would be April 30th.

34

Proceedings

1           MR. FEMIA:  That would be fine.

2           THE COURT:  Okay.  April 30th.  Okay.  And then

3    after that, to commence summary judgment practice which I

4    explained a moment ago, Mr. Hayes, which is an attempt to

5    get a case dismissed before trial.

6           This is Judge Bianco's case, so you would just

7    need to write a letter Mr. Femia.  How much time would

8    you need after the expert disclosure to write a letter to

9    Judge Bianco?

10          MR. FEMIA:  That would be April 30th for the

11   disclosure, 45 days thereafter?

12          THE COURT:  So you want till June 15th?

13          MR. FEMIA:  Certainly.

14          THE COURT:  That's for the -- yeah, June 15th?

15          MR. FEMIA:  Yes.

16          THE COURT:  All right.

17          MR. FEMIA:  And your Honor, if I could just

18   also say one thing --

19          THE COURT:  Sure.

20          MR. FEMIA:  -- with regard to the expert

21   disclosure.  If we can try and cut this off now, the

22   incident took place on January 29th, 2014, so an

23   amendment of the pleadings would (audio interference)

24   cure any sort of excessive.

25          THE COURT:  Okay.  I think I heard what you

Transcriptions Plus II, Inc.

Proceedings

1  said that it would be late to amend the pleadings if

2  necessary.  What Mr. Femia is suggesting is that

3  obviously in order for him to defend the client, he has

4  to have notice of all the claims.  I have not looked at

5  the complaint prior to taking the bench today.  I have no

6  idea what it says in this case.

7           He may make a motion based on what's in your

8  complaint or otherwise, Mr. Hayes, I don't know, but I'm

9  not going to cut anything of now, Mr. Femia.  If you want

10 to make a motion with respect to it -- the case, make a

11 motion but Mr. Hayes has been pro se for about ten

12 minutes, so he's got to --

13          MR. FEMIA:  I understand.

14          THE COURT:  -- strategize out how things are

15 going to proceed, and if you make a motion, he'll -- by

16 the way, Mr. Hayes, if you get a motion in writing, you

17 need to oppose it in writing, okay?

18          MR. HAYES:  Yes.

19          THE COURT:  So if you get something by mail

20 from Mr. Femia, which would also be filed in court, you

21 would have to respond by mail and deliver whatever your

22 opposition is also to the clerk, so it can be filed.  If

23 it's not filed, I won't see it or Judge Bianco won't see

24 it, and therefore we won't know what your thinking is.

25 Does that make sense?

Proceedings

1          MR. HAYES:  Yes.

2          THE COURT:  Okay.  All right.  So I'll put us

3  down for a final pre-trial conference in court.  If the

4  defendants make a motion for summary judgment, Mr. Hayes,

5  that will likely be canceled.  The pre-trial conference

6  is to schedule the trial but we'll give you something in

7  September, so that if a motion is filed, there will be

8  time to decide it.

9  (Pause)

10          MR. HAYES:  Can I get a copy of all them dates?

11          THE COURT:  Yes. September 13th at 11 a.m.

12  That will be on ECF, which is the Court system too but

13  we'll just hand you -- if you want to wait around for a

14  few minutes, Mr. Hayes, we'll just hand it to you --

15          MR. HAYES:  All right.

16          THE COURT:  -- this way you'll have it.

17          Do you have any other questions about how

18  things are proceeding, Mr. Hayes?

19          MR. HAYES:  Um.

20          THE COURT:  I see you nodding, but you've got

21  to say yes or no into the microphone.

22          MR. HAYES:  So the deadlines to be finished

23  with my depositions is --

24          THE COURT:  March 30th and I will give you

25  something that says that.

37

Proceedings

1    All right. In the meantime, and Mr. Femia

2 knows this, but if there's a -- let's say if you ask

3 questions and there's an objection and Mr. Femia directs

4 the witness not to answer, or you make a motion or

5 there's some kind of a disagreement, which happens

6 frequently in the course of litigation, your

7 responsibility then will be to make a motion, in other

8 words, write a letter to me or Judge Bianco saying we

9 have an issue, here's why I think I'm entitled to relief.

10 They would say no, Mr. Hayes is not entitled to relief,

11 and then you would get a ruling from the Court. You can

12 do that at any point while the discovery is going on,

13 okay? You've got to say yes or no.

14    MR. HAYES: Can you repeat that again?

15    THE COURT: Sure. If during the course of the

16 depositions or any other point in discovery -- discovery

17 are the points before the motion for summary judgment, if

18 you have a disagreement, that happens frequently as you

19 can imagine, between lawyers, you have to make what's

20 called a motion, which you can do by letter. Write a

21 letter to the court, either to me or to Judge Bianco, the

22 district judge in this case, saying I wanted to take the

23 deposition of a certain person, Mr. Femia objected and

24 said no. I need a -- so then you'll need a court order

25 to direct that to happen. You'll have to write a letter

38

Proceedings

1  to the court and ask for that, say I want to take the

2  deposition of this person, here are the reasons why I

3  think I'm entitled to it.  Mr. Femia could then respond,

4  here's the reasons I think Mr. Hayes is not entitled to

5  ti, and then you would get a ruling from the court, and

6  it would be either yes, take the deposition or no, but

7  that's how you would resolve the disputes, by motion

8  which in this case would be a letter to the court, okay?

9          MR. HAYES:  Yes, sir.

10         THE COURT:  All right.  Do you have any other

11 questions for me?

12         MR. HAYES:  No.

13         THE COURT:  All right.  Mr. Femia, this will

14 all be on ECF tonight.  Do you have anything you want to

15 put on the record at this point or questions?

16         MR. FEMIA:  Yes, your Honor.  So just to

17 clarify --

18         THE COURT:  Yes.

19         MR. FEMIA:  -- the matter is not stayed, the

20 plaintiff will be proceeding pro se, there's a pending

21 application for (audio interference) of counsel.

22         THE COURT:  Correct.  Mr. Hayes was actually --

23 part of this may have been while you were off the phone,

24 he was expressed about this, he wants to continue.  He

25 doesn't want any delay in the case, right, Mr. Hayes?

Proceedings

39

1          MR. HAYES:  Yes.

2          THE COURT:  Okay.  So he's going to continue

3   and if another lawyer makes an appearance on his behalf,

4   we'll handle it accordingly.

5          MR. FEMIA:  Yes, your Honor.  And in that case,

6   in the meantime, I would need Mr. Hayes' contact

7   information, address, and (indiscernible).

8          THE COURT:  Okay.  He must've given that to me

9   before you got back on the phone.  I'm sorry.  The

10  address -- let me start with an address.

11         MR. FEMIA:  Okay.

12         THE COURT:  86-39 208th Street, Apt 2D as in

13  David, and that's Queens Village, NY 11427.  That's

14  correct, right, Mr. Hayes?

15         MR. HAYES:  Yes.

16         THE COURT:  Okay.  And then a phone number

17  where you can be reached?

18         MR. HAYES:  917 --

19         THE COURT:  917 --

20         MR. HAYES:  -- 283 --

21         THE COURT:  -- 283 --

22         MR. HAYES:  -- 8756.

23         THE COURT:  -- 8756.  And the reason that's

24  important is most things, if you have a disagreement, can

25  be resolved with a phone call frankly.  It's just

40

Proceedings

1  sometimes people talk past each other, particularly in

2  writing.

3            All right, Mr. Femia, so you have that and Mr.

4  Hayes is going to go downstairs and get this stuff

5  entered on the docket as well.

6            MR. HAYES:  Yes, and I also need his contact

7  information, as well.

8            THE COURT:  Okay.  Mr. Femia?  I think it's

9  West Street?

10            MR. FEMIA:  No, your Honor.  It's Goldberg

11  Segalla.

12            THE COURT:  Oh, you're at Goldberg Segalla now.

13  Okay.  It's 200 -- do you have a pen?

14            MR. HAYES:  No.

15            THE COURT:  Mr. Nolan, can you sport Mr. Hayes

16  a pen and a piece of paper?  Do you have a piece of

17  paper?  Oh, wait you know what?  It's 200 Garden City

18  Plaza and it's 516-281-980 -- 00, sorry.  Mr. Femia?

19            MR. FEMIA:  Yes.

20            THE COURT:  Okay.  I'm just going to hand it to

21  you.  I have it right here.  Okay.  So that's all taken

22  care of.  Is there anything else?  Mr. Hayes, anything

23  else?

24            MR. HAYES:  Is there anything else?  I'm -- I'm

25  good.

41

                              Proceedings

1          THE COURT:  Okay.  Nothing from Mr. Hayes.  Is

2    there anything else, Mr. Femia?

3          MR. FEMIA:  No, your Honor.

4          THE COURT:  All right.  We are concluded.  Mr.

5    Hayes, wait around.  We'll hand you a copy of the order.

6          MR. HAYES:  All right.

7          THE COURT:  All right.  Thank you, all.

8          MR. NOLAN:  Thank you, your Honor.

9          MR. FEMIA:  All right.  Thank you.

10                         (Matter Concluded)

11                              -o0o-

42

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **21st** day of **January** 2021.

Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.